Will you call the next case, please? 310-0058, Acid Products Company, in Bethlehem, New Jersey. I am at fault with this, and there are all affidavits. I am Nancy Lisher and William Nelson v. Polyenviro Labs, Incorporated, a firm by Philip McGuire. Mr. McGuire. Good morning, Your Honors. Before I started the actual argument, I would like to clear up a housekeeping matter. I have asked your court staff to give me about an extra minute of warning before my time is up because of the fact that I have two opponents, and I don't want to be foreclosed from arguing against one of them. They have made an arrangement or an agreement as to how they will divide their time, so I would just like to advise you that I will be quitting the first one maybe a minute early. To start, this is a somewhat unusual instance because of the fact that we have effectively two separate cases, which we believe improperly were joined together with the allowance of a petition for intervention by Ms. Gennacopoulos, which we think was error on the timing, which complicated and compounded error that had been committed with respect to the original freestanding case of acid products v. Polyenviro. That case started as a plain, fairly simple, run-of-the-mill, I owe you money, or pardon me, you owe me money, I don't owe you money case. In the middle of that case, the primary witness, or the person who would have been the primary witness for Polyenviro, that's Vishnu Gaur, who was the president originally, the founder of the company, and a quite competent chemist, became ill. He was unable to give a deposition, and as a result of that, the court barred his testimony. First of all, we think that was wrong, because we have a difference between me and my opponents, particularly Ms. Lesher, as to language.  She said, no, it isn't really a sanction, it's just a managerial, procedural handling of the case. I believe she will agree with my description of that. The problem is that then, when Ms. Janikoplos filed her 11th-and-a-half-hour lawsuit, literally the day of the trial, and those two then, a day or so later, were consolidated, we have now two separate lawsuits put together. There was never an instance in which any limitation was made in the Janikoplos suit against the testimony of Vishnu Gaur. By the way, the Gaurs are a family, I sometimes find it more convenient to use a first name. No disrespect of that is intended. Let me ask you, with respect to this testimony of Mr. Gaur, what would his testimony have been? In other words, how can we review this for error, when there's no offer of proof in here as to what his testimony would have been had he testified? Because of the fact that he was not allowed to testify, that is something of a mystery, I think I have to admit. Did you request to make an offer of proof? In other words, judge, you're not going to let this guy testify, but I want to make an offer of proof and put on what he would have said had he been allowed to testify. That was not done by trial counsel, however, it is not necessary, and I cite the cases which say that when the issues are discussed, argued, ruled on, etc., it isn't absolutely necessary to do an offer of proof. I don't want to take the time to find the case, it's in the briefs. An offer of proof was not necessary, was not given. Perhaps they should have reversed that and said it wasn't given, but it wasn't necessary to begin with. Didn't trial counsel agree that Mr. Gore wouldn't testify? He did. So how can you agree to it in a trial court and then complain about your agreement on appeal? You got me stumped on that one, James. I do point out that it was necessary, and you can tell, or at least get a flavor, from the 4500 page record, in this case, of what the offer of proof would have been. Obviously because your district has the 15 page statement of facts limitation, it's compressed more than with some of the other districts in this state. But even if your point is well taken, the problem remains that the Janakoplos case came in out of the blue. Literally the day before, I believe it was, the trial. And then the order allowing the intervention was, I believe, the day after the originally scheduled trial date. And the actual trial was then postponed for two weeks, I believe, to allow some discovery. All right, so you had an agreement, but then all of a sudden you've got a new lawsuit involved, right? Right. Now, at that point, did trial counsel say, hey, wait a minute, King's ex-judge here, this is totally different now, I want Mr. Gore to testify? Right. Which is improper, because your own Ahern case, I believe it is, specifically says that change in circumstances can vitiate... No question. Now, so at that point, did trial counsel bring Mr. Gore in and say, judge, here's Mr. Gore, he wants to testify. Call on Mr. Gore to the stand. I'm sorry, I did? At that point, did trial counsel call Mr. Gore as a witness? No, he didn't. He couldn't. I don't think you can fault him for not bringing Mr. Gore in because there was still the order. Barring his testimony, which would have put him in a dilemma of saying, here's a witness that you've already barred. We think he should be allowed to testify in this part of it, and that might not find good favor with the judge. Well, it would find wonderful favor with the appellate court if you're trying to preserve that issue on appeal, I guess is my point. That's true, your honor. I am trying to do that. If you have no other questions on this point, I'll try to move on quickly and point out some of the specific errors, including that of the dueling experts where the judge literally, I believe, ignored the testimony of a much more credible witness, Dr. Funk, and that these errors, which could normally be treated as matters of discretion, bringing in the less, I don't know which way I should describe it, stricter or looser standard of review, are so egregious that they rose to the level of errors of law, which invokes the de novo standard, under which this court gives no credence to the findings of the judge. Three minutes. If the court has no further questions on the asset products, there is one particular point I do want to make sure I don't overlook, and that is the fact that asset products specifically admitted owing $85,000, that was not put in the order. And that should have been done at the very least because you can't just ignore uncontradicted testimony, especially testimony that is adverse to the party that is making the admission of it. With respect to the China cop loss element of the lawsuit, again, I believe that the main error is the fact that these two completely independent, unrelated cases were combined at the very last minute, that as a matter of law, and this I don't believe there should be no question about, the China cop loss did not present anything or show anything that would justify under the statute intervention, and that is an error of law which should be reviewed again by the de novo standard. If I may just glance through some of my notes here. Again, Ms. Jennick Hoplos, I believe admitted that her background is biology, not chemistry, and that she formulated a product on her kitchen stove. Again, this is so overweight by Dr. Funk that it becomes an error of law. Time is up. You'll have a few minutes for rebuttal, Mr. McGuire. I do not take this as a waiver and I would submit anything I didn't get to in oral on the briefs. Thank you. You've got some time reserved for rebuttal. Thank you, Mr. McGuire. Counsel, good morning. Counsel, good morning. My name is Ainsley Lisher and I represent, let me just mark this time, I represent Acid Products, which packages and distributes commodity chemicals and also blends these things. Obviously you're aware of these issues, can I just start with, it was a bench trial, but at issue on appeal are several discretionary, abusive discretion, let me back up, there are certain rulings, evidentiary and discovery rulings, that are reviewed conclusively by an abusive discretion standard of review. The definition of abusive discretion is in one of Pelley's own cases, Schmidt holds, that a court abuses its discretion if the first prong is, acts arbitrarily without employing conscientious judgment, exceeds the bounds of reason, and ignores recognized principles of law. Or, number two, if no reasonable person would take the position adopted by the trial court. The ignores recognized principles of law is not separated in this definition. Pelley argues today, and in the reply brief, that citing U.S. Steel argues, well, if the factual conclusions are so egregious, somehow this transforms something that, an issue that's reviewed under an abusive discretion standard, into a question of law. But U.S. Steel doesn't stand for that proposition, it was an administrative review case, and in that case, the court had to decide whether the pollution control board, which was reviewing an agency decision, had erroneously applied the wrong standard of review, so it was a board reviewing an agency decision. In that case, because the regulation gave the board the discretion to decide the issue, in that case, whether to hold the hearing, the appellate court reversed. This case doesn't say, as Pelley has argued, that if a factual conclusion is so egregious, then it shows that the law was ignored, or it's rendered into a question of law that is then reviewed de novo. I'd like to borrow a phrase from the intervener's attorney, which is, the standard of review doesn't change because the court, quote, really, really abuses its discretion. The standard of review remains the same. The other issue I'd like to address is whether there was any error caused by Mr. Vishnugor not testifying. It's exhaustively briefed. This record is perfectly clear that on appeal, the argument is he was a primary witness, but in the trial court, he said, we don't need him. Moreover, when directly asked by the judge, well, isn't it fair if he's not going to testify at his death, then he can't testify at trial. And the trial counsel, which was not Mr. McGuire, said, yeah, that's right, your honor. At trial, there was sworn testimony by Neil Gore. I have the most information about this case and the events. So suddenly on appeal, Pelley claims, well, you've got to reverse because the trial court erred in barring Mr. Vishnugor when, in fact, Pauline Viro spent a lot of energy making sure he didn't testify. You can't have it always. You can't go to the trial court and say, please don't make this guy testify. Come to this court and ask for a reversal based on the fact that he didn't testify. This is a classic invited error scenario. And a litigant can't complain of an error that he either induced the trial court to make or to which he consented. And I submit this record is pretty clear that he consented. Justice Schmitt has pointed out through questioning, and I believe that Pauline Viro now agrees, that there was no offer of proof. That there's nothing in this record that shows what would have Vishnugor have testified to. It's axiomatic that no trial is error free. That courts on appeal or reviewing courts will only reverse if there's prejudice. And if we don't have an offer of proof in this case, how do you know what he would have said and whether the order caused prejudice? Pauline Viro never stated on the record what Vishnugor would have testified to. To be perfectly honest, this is an understandable omission since it actively sought to have him not testify. But today and in the reply brief, Paley argues, well, it's not really necessary. And he cites a couple of cases, Creighton and Stapleton, arguing, well, the question shows the purpose and the materiality of the evidence, arguing it's sort of inferred. Well, the problem with relying on those cases, the witness was on the stand. The questions were posed. The objection was sustained, but because the record showed somehow that what the answer would have been, there was some sort of inference. The court said, well, you don't really need an offer of proof in that instance, but that's not our circumstance here. I'd like to just make a couple of points about the intervention, which is my co-counsel's issue. But it has been argued that the error was somehow compounded. In June of 2008, my CEO, her name is Jan Fisher, testified that this wonderful case was not a case of bias. That one formula, PE 102, was owned by Bessie Genicopolis. And at the same time she testified to that, for the next several months, Pauline Biro was resisting having Vishnugor testify. The January order, he agreed, by the way, like in December, I think, well, if he doesn't testify at his death, of course he can't testify at trial. The trial judge said, well, I'm going to continue ruling. I'm not going to rule yet, because maybe he'll recover. But he did not. A month after that order was entered, there was the intervention order. And as Justice Schmidt has pointed out, the order barring his testimony is an interlocutory order, subject to revision at any time before judgment. You can always ask a court to reconsider an order such as this. And instead of asking if Vishnugor could testify, Pelley's attorney said, at trial, Vishnugor is unable to testify live. His cardiologist sat for a deposition and explained the problems. So it's not really fair to argue that not having him testify was unfair, given the fact that he was not able to testify. Given the fact that it was his position that he could not. But in any event, there was no prejudice, because Acid Products at that point was already defending the case on the basis that PE-102 was owned by Bessey, not by Pelley and Biro. Let me ask you real quick, Mr. McGuire made reference to an admission by Acid that they did owe $5,000. Yeah, your honor, in the reply brief, this was raised for the first time, so under 341 I would submit it's waived. But to the merits, count two was on threat and dumping, and there was summary judgment entered on that count. If he's talking about count eight, this was a dispute over inventory. Because this wasn't raised in the opening brief, I didn't provide the record sites, I will today. There was a dispute over inventory located at Mertz, and it was resolved after Acid Products filed for Repleven. This is record 274-89, 373-76, 768-69, 780-84, 793-811, I think there was a lot of testimony. I have exhibits here too, I could perhaps provide them after argument. In any event, the Repleven action was filed. Fisher sends an email and says, let's settle. There's no response, but once the Repleven action had been filed, Gore accepted her offer. This is R912-13 and 625-27. Thank you. So if he's talking about count eight, the trial court found in her opinion that this was settled, and they couldn't sue on this. If he's talking about threat and dumping, well the 85,000 means nothing, because it was threat and dumping. It was trial testimony, he was confused. But it was settled, and that was shown proven. And the other thing that the court said was, Pelley never proved that Acid Products agreed to pay Pelley for the inventory. So not only did they not prove that there was an agreement, but there's also evidence in this record to support the finding of settlement. If you have no further questions, I defer my time to my other appellee. Thank you, Your Honor. Mr. Nelson. Thank you, Your Honor. May it please the court, my name is William Nelson, I represent Bessie Genicopolis and Orchard Products, Inc. Two of the appellees this morning. I would adopt some of Ms. Lisher's argument with respect to the intervention and the barring order. The barring order was entered in January of 2009. Prior to that time, as Ms. Lisher indicated, there was testimony from the primary prosecutor, a person in her business, that they thought that Bessie Genicopolis owned the formula for PE 102. This also should have been made clear to the appellant in the summary judgment filings that were made in November of 2008. And for them to succeed on the third count of their third amended counterclaim, which was filed in September of 2008, and that count was for interference with prospective economic advantage, they would have to prove that the right to sell PE 102. As Ms. Lisher intimated, ACID was already defending this case based on the notion that Ms. Genicopolis owned the formula for PE 102 and consequently the appellant had no right to bring a cause of action based on that formula. We agree with that. And it seems to be that they should have been fully aware that at the time of the barring order, they had to make that proof. They could not do it. My client, Bessie Genicopolis, was subpoenaed as a trial witness. My client was subpoenaed as a trial witness. She could have sat as a trial witness and taken the risk that the appellant did not prove some work for hire agreement or that the other appellee would adequately protect her trade secret rights. But she continued to sell a derivative of what she called her product, Clean 102, and she couldn't take the chance that the other of those events did or did not happen. As a consequence of that, she intervened to protect her trade secret right in the formula. There was no evidence to the contrary that she was not the creator of the formula. There was no evidence that she was W-2 employee of the appellant. And there was no evidence of any work for hire agreement. And I thank the court for allowing my client to be heard. Thank you, Mr. Nelson. Mr. McGuire, some rebuttal? On the question of proof issue raised by Ms. Lesher, I believe I cited the case which said that the offer of proof is, quote, generally, close quote, necessary, which means that there are potential situations in which it either is waived or is not necessary. I submit that it was not necessary. But let's say that the offer of proof isn't necessary. What changes in the circumstances? I mean, the reason he didn't testify, supposedly, was because of his health. Did his health improve? I mean, I don't understand what argument can now be made when the reason that he didn't testify was that you claimed and said he was sick. His cardiologist said, no, he can't sit for a deposition and he's not well enough to testify. Did that change? Yes, the intervention suit was filed against Pauline Viro, which was a change in circumstance. He now has two suits, one of which has added allegations, or at least insinuations, that Ms. Gennacopoulos had direct contact with Mr. Gore, Vishnu Gore, that was not present previously. Ms. Fletcher argues concerning who's got the or the statement in the record concerning who's got the most knowledge. I submit that it's just as appropriate to say that of those other than Vishnu who was precluded from testifying, the person with the greatest knowledge was Neal. So I think that's a question of semantics as much as everything else. As to Ms. Gennacopoulos' argument, there was literally absolutely nothing she had to fear because she was not made a party to the lawsuit. Anything that went on between the parties could not have affected her because there was no chance legally for collateral estoppel res judicata or anything that could bar her or affect her rights. Thank you, Your Honor. Thank you, Mr. McGuire. And thank all of you for your arguments here this morning. This matter will be taken under advisement. A written disposition will be forthcoming.